1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                      NORTHERN DISTRICT OF CALIFORNIA

9

10   **MELVIN SMITH**,                           Case No.  15-cv-01779-YGR

              Plaintiff,
11
                                                GRANTING IN PART AND DENYING IN PART
         v.                                     MOTION TO DISMISS WITHOUT LEAVE TO
12
                                                AMEND
   **WELLS FARGO BANK, N.A., ET AL.,**
13                                              Re: Dkt. No. 17
              Defendants.
14

15          Plaintiff Melvin Smith ("Smith") originally brought this action in the Superior Court of the

16   State of California, County of Alameda, against Defendant Wells Fargo Bank, N.A. (also sued as

17   "Wells Fargo Home Mortgage") ("Wells Fargo") for claims arising from foreclosure proceedings

18   initiated by Wells Fargo.  Wells Fargo removed the action to this Court on April 20, 2015.  (Dkt.

19   No. 1, Notice of Removal.)

20          In his First Amended Complaint ("FAC"), filed June 5, 2015 (Dkt. No. 16), Smith alleges

21   five claims: (1) violation of California Civil Code section 2923.6; (2) violation of California Civil

22   Code section 2923.7; (3) negligence; (4) unfair business practices in violation of California

23   Business & Professions Code section 17200 ("UCL"); and (5) violation of the Equal Credit

24   Opportunity Act ("ECOA"), 15 U.S.C. section 1691(d)(1).  Wells Fargo has filed a Motion to

25   Dismiss the FAC on the grounds that Smith has failed to state any claim.  (Dkt. No. 17.)

26          Having carefully considered the papers submitted, the matters properly subject to judicial

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

notice,[1] and the pleadings in this action, and for the reasons set forth below, the Court hereby

**ORDERS** that the Motion to Dismiss the FAC is **GRANTED IN PART** as to the claims for violation

of section 2923.6 and the ECOA, and **DENIED IN PART** with respect to the claims for violation of

section 2923.7, negligence, and violation of the UCL.  Because the ECOA and section 2923.6

claims are precluded as a matter of law based upon the facts alleged, the Court finds that any

amendment would be futile and no leave to amend is granted.

## I.     BACKGROUND

The FAC alleges that in September of 2004, Smith obtained a $253,000 loan secured by

property in Oakland, California from World Savings Bank, FSB.  Wells Fargo is the successor to

World Savings Bank.  Plaintiff defaulted on his loan in 2009 and obtained a loan modification in

2010.  (*Id.* ¶ 28.)

Smith defaulted on the modified loan in May 2012.  (*Id.* ¶ 31.)  Smith alleges that he was

told to stop making payments in order to obtain a more advantageous interest rate.  He attempted

to modify the loan from 2012 to 2013.  (*Id.* at ¶ 33.)  He submitted a loan modification application

in December 2012, which was denied orally by Wells Fargo in January 2013, but not in writing.

(*Id.* ¶¶ 34, 35, "Second Modification Request".)  Based upon an increase in his income, he again

applied for a loan modification in the summer of 2013.  (*Id.* ¶ 36.)  Wells Fargo denied that

application based upon a gross monthly income figure that was incorrect.  (*Id.* ¶ 36.)  Plaintiff

contends this denial was an error because he qualified for a modification under "HAMP"

guidelines.  (*Id.* ¶ 39.)  Plaintiff also contends that Kayla Jacobs was assigned as Wells Fargo's

"single point of contact" but never answered any of the twenty or more calls Smith made to her.

(*Id.* ¶ 41.)

In August 2014, Wells Fargo filed a Notice of Default on the loan.  (*Id.* ¶ 42.)

In November 2014, Smith submitted a new loan modification package to Wells Fargo.  (*Id.*

---

[1] Wells Fargo seeks judicial notice of documents concerning World Savings and Wachovia Mortgage, FSB's merger with Wells Fargo, as well as the deed of trust, note, notice of default, notice of trustee's sale, and modification agreement alleged in the FAC.  The Court **GRANTS** the unopposed request for judicial notice of these documents in connection with this motion.

¶ 43, "Third Modification Request.")  The date on which this occurred is not specified in the FAC. (*Id.*)  On November 10, 2014, Wells Fargo recorded a Notice of Trustee's Sale for the property, scheduling a sale for December 1, 2014.  (*Id.* ¶¶ 44, 45.)  Wells Fargo then postponed the sale date based upon the submission of the modification package.  (*Id.* ¶ 46.)

On January 15, 2015, Wells Fargo denied the November 2014 loan modification application based on a determination that Smith's monthly household gross income was $1,728.25.  (*Id.* ¶ 47.)  Smith appealed this decision on January 26, 2015, contending that his monthly gross income was much higher (approximately $5,000).  (*Id.* ¶ 48.)  Wells Fargo nevertheless denied his appeal.  (*Id.* ¶49.)

On March 6, 2015, Smith submitted another loan modification application based on his spouse's contribution to the household income.  (*Id.* ¶ 50, "Fourth Modification Request.")  Smith alleges that, as of the time of filing of the FAC, Wells Fargo had scheduled a trustee's sale for July 20, 2015.[2]

## II.   APPLICABLE STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't* 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiffs.  *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  This "facial plausibility" standard requires

---

[2]  Smith objects, on relevance grounds, to Wells Fargo's request that the Court take judicial notice of the fact that no temporary restraining order or preliminary injunction has been sought in the federal court.  (Dkt. No. 23.)  That objection is **OVERRULED**.  The Court notes, however, that a temporary restraining order was sought in the Alameda County Superior Court prior to Wells Fargo's removal of the action to this Court.  (FAC ¶ 57.)  The record is silent as to whether the sale was postponed after that filing.

United States District Court
Northern District of California

the plaintiffs to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. While courts do not require "heightened fact pleading of specifics," plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

## III.   DISCUSSION

### A.   Civil Code Section 2923.6

Smith alleges that Wells Fargo is violating California Civil Code section 2923.6 by: (1) never responding in writing regarding the January 2014 modification denial before recording a notice of default in July 2014 and a notice of trustee's sale in November 2014; and (2) proceeding toward foreclosure despite never having made a determination on Smith's complete March 9, 2015 loan modification application. (FAC ¶¶ 55, 56.) Wells Fargo argues that a formal denial of the January 2014 application is immaterial and without effect because Smith already knew of the denial and subsequently applied for modification twice, based upon updated information. Wells Fargo further argues that neither of these alleged failures entitles Smith to halt foreclosure proceedings because Smith was already granted a loan modification and defaulted on that modified loan.

California Civil Code section 2923.6(c), the "dual-tracking" provision in the California Homeowner's Bill of Rights ("HBOR"), provides:

> If a borrower submits a complete application for a first lien loan modification…[the holder of the deed of trust] shall not record a notice of default

United States District Court
Northern District of California

4

1

or notice of sale, or conduct a trustee's sale, while the complete first lien loan
modification application is pending… until any of the following occurs:

2

    (1) The mortgage servicer makes a written determination that the borrower
is not eligible for a first lien loan modification, and any appeal period pursuant to
subdivision (d) has expired.

3

    (2) The borrower does not accept an offered first lien loan modification
within 14 days of the offer.

4

5

    (3) The borrower accepts a written first lien loan modification, but defaults
on, or otherwise breaches the borrower's obligations under, the first lien loan
modification.

6

7

Thus, under section 2923.6(c)(3), a borrower who already obtained and defaulted on a first lien

8

loan modification is not entitled to the protections against recording of notices and conducting a

9

trustee's sale during the pendency of a later loan modification application.  "In order to minimize

10

the risk of borrowers submitting multiple applications for first lien loan modifications for the

11

purpose of delay," section 2923.6(g) provides that new modification applications need not be

12

considered if the borrowers "have already been evaluated or afforded a fair opportunity to be

13

evaluated for a first lien loan modification…unless there has been a material change in the

14

borrower's financial circumstances since the date of the borrower's previous application and that

15

change is documented by the borrower and submitted to the mortgage servicer."  Cal. Civ. Code §

16

2923.6(g).

17

      Here, as the FAC alleges, Smith received a loan modification in 2010 and subsequently

18

defaulted on the modified loan.  (FAC ¶¶ 28, 31.)  Thus, under section 2923.6(c)(3), Wells Fargo

19

could proceed with the recording of a notice of default or notice of sale, or with conducting a

20

trustee's sale of Smith's property.

21

      Smith argues that other district courts have found servicers to be bound by the prohibitions

22

on dual tracking in section 2923.6 when they agree to consider a loan modification application,

23

even if one of the exceptions in 2923.6(c) applies.  The authorities cited by Smith do not support

24

such a broad proposition, and are distinguishable from the facts here.  In *Vasquez v. Bank of Am.,*

25

*N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924 (N.D. Cal. Nov. 12, 2013), the plaintiff alleged

26

that the defendant bank denied her first loan modification application, but then told her the denial

27

was in error and that she should submit a new application.  The court found that she had alleged a

28

claim for violation of section 2923.6 on the theory that the bank's professed error and direction to

United States District Court
Northern District of California

5

1  resubmit obligated it to evaluate the second application and to delay foreclosure proceedings while

2  the application was pending. *Id.* at *9. Similarly, in *Dias v. JP Morgan Chase, N.A.*, No. 5:13-

3  CV-05327-EJD, 2015 WL 1263558 (N.D. Cal. Mar. 19, 2015), the plaintiffs alleged that they had

4  entered into a loan modification agreement with the defendant bank, but the bank then refused to

5  accept their first payment on the modified loan and directed them to submit a new application. *Id.*

6  at *1-2. In addition, the plaintiffs' new loan modification application included a documented

7  material change in income, which the court found placed the claim within the scope of section

8  2923.6(g). *Id.* at *5. Thus the court concluded that plaintiffs alleged a claim for violation of the

9  dual tracking protections.

10      Here, by contrast, Smith alleges he was given a loan modification on which he made

11  payments for a couple of years, but later defaulted. Smith has not alleged a denial and new

12  application, nor has he alleged that Wells Fargo told him it had made any error, or directed him to

13  resubmit an application. Section 2923.6(c)(3) excludes dual tracking protections in these

14  circumstances.³

15      Smith also argues that Wells Fargo's interpretation of the statute to preclude protections

16  for borrowers defaulting on a prior modification would be inconsistent with the statute's

17  requirement, in section 2923.6(f)(4), that a lender notify a borrower if it is denying a modification

18  application because "the borrower was previously offered a first lien loan modification and failed

19  to successfully make payments under the terms of the modified loan." The Court does not find

20  any inherent inconsistency in a provision requiring notice that a borrower's prior default was the

---

³ The Court further notes that section 2923.6(g), referenced in *Dias*, appears to be limited to subsequent applications from borrowers whose initial modification requests are *rejected*. *Cf. Gilmore v. Wells Fargo Bank N.A.*, No. C 14-2389 CW, 2014 WL 3749984, at *4 (N.D. Cal. July 29, 2014) ("[i]f the borrower has previously been reviewed for a loan modification *and has been denied*, then the servicer is not required to evaluate a new application unless it includes a documented change of the borrower's financial circumstances," citing section 2923.6(g) [emphasis supplied]). However, assuming that section 2923.6(g) also applies to borrowers whose first modification application was *accepted*, Smith would need to allege a documented material change in his financial circumstances in order for Wells Fargo to have an obligation to consider the later modification applications alleged in the claim. Because Smith has not done so, the claim is insufficiently alleged.

1    basis for denying modification, and a provision denying protection from foreclosure proceedings

2    where the borrower previously defaulted on a loan modification.

3         In short, Smith has not alleged a factual or legal theory to avoid the statute's exclusion

4    from dual tracking protections of borrowers like Smith, who already obtained a first lien loan

5    modification and then defaulted on that modification.  The motion to dismiss the dual tracking

6    claim under section 2923.6 is **GRANTED**.

7         **B.    Civil Code Section 2923.7**

8         Smith's second claim for relief alleges that Wells Fargo violated California Civil Code

9    section 2923.7 by failing to appoint an adequate single point of contact (SPOC) to communicate

10   with him regarding his modification applications. (*See* FAC ¶¶ 63-66.)  Smith alleges that he

11   sought to speak with the SPOC on numerous occasions but was not able, and received

12   contradictory and confusing information about what information Wells Fargo needed and whether

13   foreclosure proceedings would be postponed.  (FAC ¶¶ 63, 65, 66.)  Smith alleges that, after he

14   "submitted the loan modification application, he called [the SPOC] numerous times to inquire as

15   to the status of [his] application, but [the SPOC] failed to return any of his calls" and instead Wells

16   Fargo proceeded with the foreclosure process.  (FAC ¶ 66.)

17        Wells Fargo argues that section 2923.7 only requires that an SPOC be designated "upon a

18   request from a borrower."  Because the FAC does not allege that Smith requested a SPOC, Wells

19   Fargo contends that the claim should be dismissed.  However, numerous courts have found that

20   the language of the statute requires an SPOC to be appointed when a borrower "requests a

21   foreclosure prevention alternative," such as a loan modification.  Cal. Civ. § 2923.7; *see, e.g.,*

22   *Penermon v. Wells Fargo Bank, N.A.,* 47 F. Supp. 3d 982, 1000 (N.D. Cal. 2014) ("[a] plain

23   reading of the statute requires Wells Fargo to assign a[n] SPOC when a borrower requests a

24   foreclosure prevention alternative.  It does not require a borrower to specifically request a[n]

25   SPOC."); *Hild v. Bank of Am., N.A.*, No. EDCV 14-2126-JGB SPX, 2015 WL 401316, at *7 (C.D.

26   Cal. Jan. 29, 2015); *Hixson v. Wells Fargo Bank NA*, No. C 14-285 SI, 2014 WL 3870004, at *5

27   (N.D. Cal. Aug. 6, 2014) (lender to establish SPOC when it receives an application for a

28   foreclosure prevention alternative).  Smith's allegation that the SPOC appointed by Wells Fargo

United States District Court
Northern District of California

7

1    was not adequate because she did not return any phone calls and keep him apprised of current

2    information about the status of the foreclosure and loan modification application is sufficient to

3    allege a claim under section 2923.7.  *Cf. Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d at

4    999 (allegation that SPOC failed to return any of plaintiff's calls sufficient to state claim); *Hixson*,

5    2014 WL 3870004 at *6 (same).

6        The motion to dismiss the claim for violation of section 2923.7 is **DENIED**.

7        **C.    Negligence**

8        Smith alleges in his third claim for relief that Wells Fargo, "[a]s the servicer and lender of

9    Plaintiff's loan that voluntarily agreed to consider Plaintiff for a loan modification, [Wells Fargo]

10   had a duty to exercise reasonable care in considering Plaintiff for a loan modification, including

11   complying with the HAMP guidelines." (FAC ¶ 70.)  Smith alleges that Wells Fargo was

12   negligent due to: (1) its failure to "timely review the applications;" (2) its attempt to foreclose

13   while his application was "under consideration;" and (3) its reliance on "incorrect information in

14   reviewing Plaintiff's applications." (FAC ¶ 71.)  Smith alleges he was damaged by losing equity in

15   his home, accruing additional interest, paying more in payments, suffering credit loss, and

16   emotional distress.  (FAC ¶ 70.)

17       Wells Fargo argues that the negligence claim must be dismissed because lenders do not

18   owe their borrowers a duty of care in loan modification negotiations.  Moreover, Wells Fargo

19   contends that the damages alleged resulted from Smith's default on his loans, not on Wells

20   Fargo's actions with respect to his loan modification applications.

21       Wells Fargo is correct that "[a]s a general rule, a financial institution owes no duty of care

22   to a borrower when the institution's involvement in the loan transaction does not exceed the scope

23   of its conventional role as a mere lender of money." *Alvarez v. BAC Home Loans Servicing, L.P.*,

24   228 Cal. App. 4th 941, 945 (2014) (citing *Nymark v. Heart Fed. Savings & Loan Assn.*, 231

25   Cal.App.3d 1089, 1095–1096(1991)).  However, the court in *Alvarez* held that, once it accepts a

26   loan modification application for consideration, a financial institution has a duty of care to the

27   applicant since it is "entirely foreseeable that failing to timely and carefully process the loan

28   modification applications could result in significant harm to the [applicant]." *Alvarez*, 228 Cal.

United States District Court
Northern District of California

8

App. 4th at 948.  Federal courts considering claims of negligence in the handling of loan modification applications have followed *Alvarez*.  *See, e.g., Johnson v. PNC Mortgage*, 80 F. Supp. 3d 980, 985 (N.D. Cal. 2015) ("once a mortgagee undertakes to consider a loan-modification request, it owes the borrower a duty to use reasonable care in handling that request"); *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1268 (N.D. Cal. 2014) (allegations that Wells Fargo failed to process completed application, gave borrower inaccurate information and attempted to foreclose while application was pending were sufficient to allege that Wells Fargo breached a duty owed to borrower by failing to process his loan modification with reasonable care).

Smith has alleged that Wells Fargo accepted his applications for a loan modification, but failed to review the applications timely, attempted to foreclose on the property while the applications were pending, and relied upon incorrect information in denying a modification. These allegations are sufficient to state a claim for negligence.  The motion to dismiss the negligence claim is **DENIED**.

### D.     UCL

Wells Fargo seeks to dismiss Smith's UCL claim on the grounds that it is "entirely derivative" of his claims for violation of sections 2923.6 and 2923.7.  Because the allegations are sufficient to state a claim for violation of section 2923.7, as stated above, the motion to dismiss this claim is likewise **DENIED** as to this derivative claim.

### E.     ECOA

The FAC alleges that Plaintiff submitted a complete application for credit in November 2014 and Wells Fargo did not inform him of its decision until January 2015, more than 30 days later, which Smith alleges violates 15 U.S.C. section 1691(d)(1) of the ECOA.  Wells Fargo contends that Smith has failed to state a claim because, as the implementing regulations for 15 U.S.C. section 1691(d)(1) set forth, the notice requirements in that section are only triggered upon: (1) approval of credit; (2) a counteroffer for credit; or (3) an "adverse action."  12 C.F.R. § 209.9(a)(1)(*i*)-(*iv*).  "Adverse actions" do not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default," 12

1    C.F.R. § 1691(d)(6), or "any action or forbearance relating to an account taken in connection with

2    inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2(c)(2)(*ii*).

3         Many of the courts that have considered ECOA claims based upon lack of timely notice of

4    a decision on a loan modification have found that the borrower's default or delinquency precluded

5    the claim. *See, e.g., Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1140 (N.D. Cal.

6    2013) (borrower who sought an extension of credit, a loan modification, while he was delinquent

7    in payments on his mortgage loan did not state a violation of the ECOA's notice requirements

8    because denial of a modification was not an "adverse action"); *Gomez v. Bayview Loan Servicing,*

9    *LLC*, No. 3:14-CV-04004-CRB, 2015 WL 433669, at *4 (N.D. Cal. Feb. 2, 2015) ("Under the

10   plain terms of the statute, then, an actionable "adverse action" does not include a refusal to extend

11   additional credit where, as here, "the applicant is delinquent or otherwise in default [.]"")  More

12   recently, in *MacDonald v. Wells Fargo Bank N.A,* No. 14-CV-04970-HSG, 2015 WL 1886000, at

13   *3 (N.D. Cal. Apr. 24, 2015), the district court interpreted section 1691 as providing two separate

14   rights: (1) notification of an "action" on a credit application; and (2) a statement of reasons the

15   creditor takes an "adverse action" on the credit application.  The court in *MacDonald* concluded

16   that the exclusion for applicants who are "delinquent or otherwise in default" impacts only their

17   right to a statement of reasons, not their right to notification of a decision.  *MacDonald v. Wells*

18   *Fargo Bank N.A,* No. 14-CV-04970-HSG, 2015 WL 1886000, at *3 (N.D. Cal. Apr. 24, 2015).

19   Smith relies heavily on *MacDonald* in contending that his ECOA claim survives.

20        The Court finds that the ECOA notification provision does not apply to Smith because he

21   alleges that he was in default at the time of the loan modification application.  Section 1691,

22   subsection (d), provides in pertinent part:

23            (d) Reason for adverse action; procedure applicable; "adverse action"
         defined
24            (1) Within thirty days (or such longer reasonable time as specified in
         regulations of the Bureau for any class of credit transaction) after receipt of a
25       completed application for credit, a creditor shall notify the applicant of its action
         on the application.
26            (2) Each applicant against whom adverse action is taken shall be entitled
         to a statement of reasons for such action from the creditor. A creditor satisfies this
27       obligation by--

28

10

> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request. …
>
> (6) For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d). While the heading of subsection (d) states that it addresses "adverse action," subsection (d)(1) states that a creditor shall notify an application of its "action." *Id.*

In offering competing interpretations of an arguably ambiguous statutory provision, the parties in *MacDonald* did not argue, and the court there did not consider, the effect of the regulations implementing section 1691's notice requirements. *See MacDonald v. Wells Fargo Bank N.A*, No. 14-CV-04970-HSG, 2015 WL 1886000 (N.D. Cal. Apr. 24, 2015), and Dkt. Nos. 8, 24, and 31. The applicable regulations clarify that notification is "required" only for approval, counteroffer, or "adverse action." 12 C.F.R. § 202.9(a)(1)(*i*). In turn, the regulations setting forth the definitions applicable to section 202.9 and the surrounding ECOA regulations states that "adverse action…does not include…[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2(c)(2)(*ii*). Thus, to the extent the statute was at all ambiguous about whether a notification is required where the applicant is already in default, the implementing regulations state clearly that no notice is required in that circumstance. *See also Kaswell v. Wells Fargo Bank, N.A.*, No. CIV.A. RDB-13-2315, 2014 WL 3889183, at *4 (D. Md. Aug. 6, 2014) (notice requirements did not apply because mortgage was in default); *Guthrie v. Bank of Am., Nat. Ass'n*, No. CIV. 12-2472 ADM/LIB, 2012 WL 6552763, at *6 (D. Minn. Dec. 14, 2012) ("Plaintiffs do not dispute that they had defaulted on their mortgage by the time of their loan modification request. As a result, Bank of America's denial of this request did not amount to an 'adverse action,' and it did not trigger ECOA notice

11

requirements.”); *Pandit v. Saxon Mortg. Servs., Inc.,* No. 11–3935, 2012 WL 4174888, at *7 (E.D.N.Y. Sept. 17, 2012) (notice requirement did not apply because plaintiffs were in default), *but cf. Green v. Cent. Mortgage Co.*, No. 3:14-CV-04281-LB, 2015 WL 7734213, at *17 (N.D. Cal. Dec. 1, 2015) (following statutory interpretation in *MacDonald* to deny motion to dismiss ECOA notice claim).

In sum, the Court does not find Smith's argument persuasive.  Under the Court's reading of the applicable statute and regulations, the fact that Smith was in default when he applied for a loan modification means that no ECOA notice was required regarding action on his application.

Consequently, the motion to dismiss the ECOA claim is **GRANTED**.

## IV.   CONCLUSION

Accordingly, the Motion to Dismiss the First Amended Complaint is **GRANTED IN PART** as to the claim under Civil Code section 2923.6 and the ECOA notice claim without leave to amend and **DENIED** as to the claims for violation of Civil Code section 2923.7 and the UCL, and for negligence.  Leave to amend would be futile under the circumstances, and is denied.

Wells Fargo shall file its answer no later than **February 9, 2016**.

The Court **SETS** a case management conference on **February 29, 2016**, at 2:00 p.m.

This terminates Docket No. 17.

**IT IS SO ORDERED.**

Dated: January 25, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**